## STATE OF CONNECTICUT *v.* TAN PRAZERES
## (AC 26274)

Bishop, Harper and McDonald, Js.

Argued April 25—officially released September 19, 2006

*Ralph C. Crozier,* for the appellant (defendant).

*Jessica Probolus,* special deputy assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan,* state's attorney, and *Warren C. Murray,* supervisory assistant state's attorney, for the appellee (state).

HARPER, J. The defendant, Tan Prazeres, appeals from the trial court's denial of his motion for permission to file an application for sentence review. The defendant claims that the court improperly concluded that he had received the notice of his right to sentence review to which he was entitled. We agree with the defendant and reverse the judgment of the trial court.

The relevant procedural history is not in dispute. In June, 1998, the court accepted the defendant's plea of nolo contendere to one count of assault in the first degree. In August, 1998, the court sentenced the defendant to a term of incarceration of ten years, suspended after three years served, and three years of probation. At the time of sentencing, the court clerk provided the defendant with notice of his right to apply for sentence review. In February, 2002, the defendant commenced his period of probation. In April, 2003, the state charged the defendant with having violated the terms of his probation. In June, 2004, the court conducted an evidentiary hearing and found that the defendant had violated the terms of his probation. On June 9, 2004, the court revoked the defendant's probation and committed the defendant to the custody of the commissioner of correction for a term of incarceration of six and one-half years.

On November 24, 2004, the defendant filed a motion entitled "Motion to Permit Late Filing of Application for Sentence Review." The defendant's motion was related to the sentence imposed on June 9, 2004. The defendant represented, inter alia, that more than thirty days had passed since the revocation proceeding and that he "was never provided with any notice, by the clerk of the court, that he had the right to sentence review." The defendant argued that, although he had been advised of his right to sentence review at the time of his sentencing in August, 1998, he was entitled to notice of his right to sentence review at the conclusion

of the revocation proceeding. In support of his argument, the defendant argued that General Statutes § 51-195, which codifies his right to apply for sentence review and mandates the notice of such right to which he is entitled, is remedial in nature and should be interpreted to favor his argument. The state argued that the defendant had been provided with the notice to which he was entitled under § 51-195 in August, 1998, and that there was no authority upon which the defendant was entitled to such notice in June, 2004.

The court concluded that § 51-195 did not require that notice be given to the defendant following the revocation proceeding. The court reasoned that because the defendant received such notice at the time the sentence was imposed in August, 1998, he had received the notice to which he was entitled under the statute. The court thereafter denied the defendant's motion.

The issue is whether § 51-195 required that the defendant, who received notice of his right to apply for sentence review upon the imposition of his sentence, be given notice of his right to apply for sentence review following the revocation proceeding. If the defendant was entitled to such notice, the court improperly denied his motion for permission to apply for sentence review.[1]

---

[1] The state argues that even if the defendant was entitled to notice of his right to apply for sentence review following the revocation proceeding, he is not entitled to relief because he did not claim that he was unaware of his right to apply for sentence review. For this proposition, the state relies solely on *State* v. *Tuszynski*, 23 Conn. App. 201, 579 A.2d 1100 (1990). On March 29, 1989, the defendant in *Tuszynski* pleaded guilty to certain crimes pursuant to a plea agreement with the state; the defendant's sentence was left to the court's discretion. Id., 202. On May 10, 1989, the court imposed a sentence. Id., 202–203. Six days later, the defendant filed a motion for sentence modification. Id., 203. On May 31, 1989, the court held a hearing on the defendant's motion and granted the motion. Id. The state thereafter filed a motion for reconsideration, which the court denied on June 13, 1989. Id. The state appealed from the court's ruling. Id.

The defendant in *Tuszynski* argued that the court had the authority to correct his sentence because the sentence was illegal. Id., 204. The defendant

Because this issue is one of statutory interpretation, our review is plenary. *State* v. *McDevitt*, 94 Conn. App. 356, 359, 892 A.2d 338 (2006). "Relevant legislation and precedent guide the process of statutory interpretation. [General Statutes § 1-2z] provides that, [t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the statute shall not be considered. . . . [P]ursuant to § 1-2z, [the court is] to go through the following initial steps: first,

argued that his sentence was illegal because the court did not provide him with the notice required by General Statutes § 51-195. *State* v. *Tuszynski*, supra, 23 Conn. App. 204. This court rejected the defendant's claim that the trial court's failure to provide him with notice of his right to apply for sentence review rendered the sentence illegal. The court concluded that the "irregularity" of the trial court's failure to provide notice, occurring after the sentence had been determined and imposed, did not create an illegal sentence. Id., 205–206. The court also concluded that, even if the defendant correctly had argued that his sentence was illegal, he could not prevail because he "[had] failed to show that he was prejudiced by the court clerk's failure to deliver the required notice." Id., 204. The court was persuaded by the fact that the defendant had filed his motion to correct his sentence six days after the trial court imposed the sentence. Id., 205. The court concluded that the defendant "obviously became aware of his right to apply well within the statutory period," "[had] demonstrated that he had full knowledge of those rights in time to act" and had instead chosen "to complain about a technical omission by the clerk." Id.

The present case is distinguishable from *Tuszynski*. At issue in *Tuszynski* was whether the defendant's sentence was illegal and whether the trial court had the authority to correct the sentence. Insofar as the state correctly argues that *Tuszynski* precludes the defendant in the present case from obtaining relief because he has failed to allege that lack of notice caused him prejudice, we are not persuaded. Although the defendant did not claim explicitly before the trial court that the court's failure to provide him with notice actually caused him prejudice with regard to his ability to apply for sentence review, it is fair to infer such a claim. Also, contrary to the facts in *Tuszynski*, there is no indication in the present case that the defendant was aware of his right to apply for sentence review during the statutory period in which he could avail himself of such right. Accordingly, we are not persuaded by the state's prejudice argument.

consider the language of the statute at issue, including its relationship to other statutes, as applied to the facts of the case; second, if after the completion of step one, [the court] conclude[s] that, as so applied, there is but one likely or plausible meaning of the statutory language, [the court] stop[s] there; but third, if after the completion of step one, [the court] conclude[s] that, as applied to the facts of the case, there is more than one likely or plausible meaning of the statute, [the court] may consult other sources, beyond the statutory language, to ascertain the meaning of the statute.

"It is useful to remind ourselves of what, in this context, we mean when we say that a statutory text has a plain meaning, or, what is the same, a plain and unambiguous meaning. [Our Supreme Court] has already defined that phrase. By that phrase we mean the meaning that is so strongly indicated or suggested by the language as applied to facts of the case, without consideration, however, of its purpose or the other, extratextual sources of meaning . . . that, when the language is read as so applied, it appears to be *the* meaning and appears to preclude any other likely meaning. . . . Put another way, if the text of the statute at issue, considering its relationship to other statutes, would permit more than one likely or plausible meaning, its meaning cannot be said to be plain and unambiguous." (Emphasis in original; internal quotation marks omitted.) *State* v. *Kalman*, 93 Conn. App. 129, 133–34, 887 A.2d 950, cert. denied, 277 Conn. 915, 895 A.2d 791 (2006).

Section 51-195 provides in relevant part: "Any person sentenced on one or more counts of an information to a term of imprisonment for which the total sentence of all such counts amounts to confinement for three years or more, may, within thirty days from the date such sentence was imposed or if the offender received a suspended sentence with a maximum confinement of three years or more, within thirty days of revocation of such suspended sentence . . . file with the clerk of

the court for the judicial district in which the judgment was rendered an application for review of the sentence by the review division. *Upon imposition of sentence or at the time of revocation of such suspended sentence, the clerk shall give written notice to the person sentenced of his right to make such a request.* Such notice shall include a statement that review of the sentence may result in a decrease or increase of the term within the limits fixed by law. A form for making such application shall accompany the notice. . . ." (Emphasis added.)

The state argues, and the trial court agreed, that the word "or" in the phrase "[u]pon imposition of sentence or at the time of revocation of such suspended sentence" unambiguously reflects that notice is required to be given once in a particular case. The defendant argues that the statute is ambiguous and should be interpreted so as to require that notice be given whenever the right to sentence review arises. We agree with the defendant that the statutory language at issue is not plain and unambiguous in that, having considered the language of the statute at issue as well as its relationship to other statutes, we are unable to conclude that there is only one likely or plausible meaning of the statutory language at issue. When viewed in isolation, the legislature's use of the word "or" in describing when notice must be given appears to require that notice need be given only once in a particular case, as here, at the time the court sentenced the defendant to a three year term of incarceration in August, 1998. When viewed in the context of the entire statute, however, it appears equally as likely that the word "or" merely distinguishes between two events, sentencing and a revocation proceeding, following which notice must be provided.

Although our review of the legislative history of § 51-195 does not shed light on the precise issue before us, we are nonetheless guided in a general sense by the

purposes underlying sentence review legislation, which includes § 51-195. "[T]he legislature passed the Sentence Review Act in 1957; Public Acts 1957, No. 436; to reduce the disparity in sentences meted out by different judges and, thereby, to quell prisoner discontent. The purpose and effect of the Sentence Review Act is to afford a convicted person a limited appeal for reconsideration of his [or her] sentence. . . . It thus gives him [or her] an optional de novo hearing as to the punishment to be imposed." (Internal quotation marks omitted.) *James L.* v. *Commissioner of Correction*, 245 Conn. 132, 144, 712 A.2d 947 (1998).

"[R]emedial statutes are to be liberally construed in favor of those whom the legislature intended to benefit. . . . [Section] 51-195 is a remedial statute because its purpose is to curb the ill effects stemming from wide judicial discretion in sentencing prisoners for similar offenses. Thus, the statute is to be construed liberally in favor of its intended beneficiaries, the prisoners seeking review of their sentences, and any exception from sentence review eligibility is to be construed strictly." (Citations omitted; internal quotation marks omitted.) *State* v. *Anderson*, 220 Conn. 400, 404–405, 599 A.2d 738 (1991).

It is also a fundamental principle of statutory construction that courts must interpret statutes using common sense and assuming that the legislature intended a reasonable and rational result. *State* v. *Lutters*, 270 Conn. 198, 218, 853 A.2d 434 (2004). Courts also must not interpret statutes in such a manner so as to thwart their purpose. *State* v. *Hall*, 82 Conn. App. 435, 442, 844 A.2d 939 (2004). It is reasonable to presume that the legislature made the notice requirement mandatory because notice is closely linked to a convicted person's ability to avail himself of his right to apply for sentence review, whether it arises at the time of sentencing or following a revocation proceeding. The statute requires

that written notice be given "[u]pon imposition of sentence or at the time of revocation of such suspended sentence . . . ." General Statutes § 51-195. In the legislative scheme, notice precedes the thirty day time period in which an application for sentence review must be filed.

Our Supreme Court has explained the statutory right created by § 51-195: "Under § 51-195, a defendant is entitled to sentence review if the revocation proceeding results in the defendant being required . . . to serve more than three years in confinement. Sentence review is provided under exactly the same circumstances as those under which a defendant is entitled to sentence review of an original sentence." *State* v. *Strickland*, 243 Conn. 339, 351, 703 A.2d 109 (1997). The defendant was required to serve more than three years in confinement following the revocation proceeding in June, 2004. Thus, the defendant was entitled to sentence review at that time.

Common sense dictates that, for the notice requirement to have an effect consistent with the purposes underlying sentence review legislation, the statute should be interpreted to require that notice be given whenever the right to sentence review arises, whether it be at the time of sentencing or following a revocation proceeding. In the present case, the defendant had a right to sentence review at the time of his sentencing as well as at the time that the revocation proceeding resulted in his being required to serve six and one-half years in confinement. The state argues that because notice was given upon imposition of the original sentence in August, 1998, that was sufficient for purposes of the statute, and notice need not have been provided following the revocation proceeding. Under the facts of this case, there was a nearly six year period of time between the time notice was provided at the time of sentencing and the time of the revocation proceeding.

One can readily imagine sentencing scenarios involving far greater periods of time between the time that an original sentence is imposed and a revocation proceeding resulting in three years or more of confinement is imposed.

For the notice requirement to serve its purpose, which is to provide information in a timely manner so that a person may make an informed decision whether to act on the time limited right that the legislature has created, we are convinced that the legislature intended that notice be given when the right to sentence review arises, regardless of whether that occurs more than once in a given case. We deem it irrational to presume that, in a case such as the present case, the legislature would have intended that notice was not required following the revocation proceeding. To render meaningful the notice requirement of the statute, we must eschew an interpretation of the statute that essentially leaves the exercise of the right to sentence review that the legislature created to the strength of a sentenced person's ability to recall precise details concerning the notice of legal rights afforded years earlier, at the time of the original sentencing. It is far more reasonable to presume that the legislature intended notice to follow the imposition of the defendant's sentence, when he was required to serve three years in confinement, and the revocation proceeding, which resulted in his being required to serve six and one-half years in confinement. Both of these occurrences gave rise to his right to sentence review.

The defendant was not provided with the notice to which he was entitled following the revocation proceeding in June, 2004. The court improperly concluded that such notice was not required and improperly denied the defendant's motion for permission to file a late application for sentence review.

The judgment is reversed and the case is remanded with direction to grant the defendant's motion for permission to file an application for sentence review.

In this opinion the other judges concurred.